IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

| | |
|---|---|
| HENRY A. SALAZAR and LUCILLE V. SALAZAR,<br><br>          Plaintiffs,<br><br>vs.<br><br>PEOPLE'S CHOICE HOME LOAN, INC.; GENISYS FINANCIAL CORPORATION; FIRST AMERICAN TITLE INSURANCE COMPANY; HARTFORD FIRE INSURANCE COMPANY; and FREMONT INVESTMENT & LOAN COMPANY,<br><br>          Defendants. | No. 04cv0946 PJK/RLP |

MEMORANDUM OPINION AND ORDER

THIS MATTER comes on for consideration of Defendant People's Choice Home Loan, Inc.'s ("People's Choice") Motion to Stay and Compel Arbitration filed December 1, 2004 (Doc. 25) and Motion to Expedite Ruling on Defendant's Motion to Compel Arbitration filed by People's Choice on December 1, 2004 (Doc. 26). The court held a hearing on the motion to stay and compel arbitration on January 19, 2005. Upon consideration thereof,

     (1) <u>Background and Parties.</u>  Plaintiffs Henry and Lucille Salazar filed suit against several defendants after Defendant People's Choice refused to fund their

loan after closing.  According to the Plaintiffs, Defendant Mariners Capital, Inc. ("Mariners") and Defendant Genisys Financial Corp. ("Genisys") were the loan brokers, termed the "broker Defendants" by the Plaintiffs.  Defendant First American Title Insurance Co. ("First American") handled the closing.  Defendants Great American Insurance Co. and Hartford Fire Insurance Co. provide surety bonds for Defendants People's Choice and Genisys, respectively.  Defendant Fremont Investment & Loan Co. ("Fremont") had been approached for funding by Defendant Genisys before People's Choice was approached.

In their complaint, Plaintiffs generally contend that People's Choice, the broker Defendants and Fremont violated the Equal Credit Opportunity Act by failing to provide them with written notice about reasons for denial of credit.  Doc. 1 at 10 ("First Claim").  They also contend that these same Defendants utilized credit reports and violated the Fair Credit Reporting Act.  Id. at 10-11 ("Second Claim").  They contend that People's Choice, and the broker Defendants are liable for fraud.  Id. at 11 ("Third Claim").  Plaintiffs also contend that People's Choice, the broker Defendants, and First American violated New Mexico's Unfair Practices Act.  Id. at 12 ("Fourth Claim").  First American is alleged to be negligent per se for failing to have obtained funds prior to closing.  Id. at 12-13 ("Fifth Claim").  Plaintiffs allege that People's Choice breached the contract and breached of the covenant of good faith and fair dealing.  Id. at 13-14 ("Sixth Claim" and "Seventh Claim").  Plaintiffs seek actual,

punitive, and statutory damages as well as costs and attorney's fees.  Id. at 14.

     (2)  Arbitration Agreement Applies.  The Plaintiffs signed an arbitration agreement with People's Choice which recites that it is made in consideration of processing the loan application at quoted interest rates.  Doc. 25, attach.  That agreement further provides:

> [I]f you and we are not able to resolve our differences informally, you and we agree that any dispute, regardless of when it arose, shall be settled, at your option or ours, by arbitration in accordance with this Agreement.

Id.  The agreement defines "dispute" as follows:

> any claim or controversy of any nature whatsoever arising out of or in any way related to the Loan; the arranging of the Loan; any application inquiry or attempt to obtain the Loan; any Loan documents; the servicing of the Loan; or any other aspect of the Loan transaction.  It includes, but is not limited to, federal or state contract, tort, statutory, regulatory, common law and equitable claims.

Id.  The Plaintiffs' claims against People's Choice are within the scope of the arbitration agreement, and Plaintiffs do not argue otherwise.

     (3)  Strong Federal Policy Favoring Arbitration and State Law Unconscionability.  The Federal Arbitration Act ("FAA"), provides that a pre-dispute agreement to arbitrate is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

9 U.S.C. § 2.[1]  Even statutory claims may be arbitrated. <u>Gilmer v. Interstate/Johnson Lane Corp.</u>, 500 U.S. 20, 23 (1991). Plaintiffs contend that the arbitration agreement is unenforceable because it is unconscionable.  As a general contract defense, state law concerning unconscionability may be applied without contravening the FAA, provided that law is not unfavorable only to arbitration. <u>Doctor's Assocs., Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996); <u>Perry v. Thomas</u>, 482 U.S. 483, 492 n.9 (1987); <u>Salazar v. Citadel Communications Corp.</u>, 90 P.3d 466, 469 (N.M. 2004).  The enforceability of the arbitration agreement is a legal matter for the court to decide.  <u>Adams v. Merrill Lynch, Pierce, Fenner & Smith</u>, 888 F.2d 696, 700 (10th Cir. 1989).

    (4)  <u>Procedural and Substantive Unconscionability.</u>  New Mexico recognizes the doctrines of procedural and substantive unconscionability. Procedural unconscionability concerns lack of alternatives "and is determined by examining the circumstances surrounding the contract formation, including the particular party's ability to understand the terms of the contract and the relative bargaining power of the parties." <u>Guthmann v. LaVida Llena</u>, 709 P.2d 675, 679 (N.M. 1985).  A contract may be procedurally unconscionable only where the inequality between the parties is so pronounced that the party invoking the

---

[1] New Mexico law favors arbitration of disputes, and generally parties are bound by arbitration agreements.  <u>Shaw v. Kuhnel & Assocs., Inc.</u>, 698 P.2d 880, 881 (N.M. 1985); <u>Christmas v. Cimarron Realty Co.</u>, 648 P.2d 788, 790 (N.M. 1982).

doctrine virtually lacks any choice. Id. "Factors to be considered include the use of sharp practices or high pressure tactics and the relative education, sophistication or wealth or [sic] the parties, as well as the relative scarcity of the subject matter of the contract." Id. Substantive unconscionabilty deals "with contract terms that are illegal, contrary to public policy, or grossly unfair." Id. Where a contract provision does not violate public policy, a party seeking to establish substantive unconscionability must show that the provision was "grossly unfair under the circumstances as they existed at the time the contract was formed." Id. at 680.

(5) The Fees Do Not Render the Agreement Unconscionable Because People's Choice Will Pay All of Them. Plaintiffs first contend that the fees associated with arbitration, including the fees pursuant to the Commercial Arbitration Rules of the American Arbitration Association ("AAA"), are prohibitively expensive and render the agreement unconscionable because the agreement provides that each party pays its own fees and costs. Doc. 32 at 7-16. This argument is moot because People's Choice now has agreed to pay all of the fees and costs for all of the parties the court orders to arbitration.

Plaintiffs rely upon Shankle v. B-G Maint. Mgmt. of Colo., Inc., 163 F.3d 1230, 1235 n.4 (10th Cir. 1999), arguing that such fee-shifting does not alter the analysis of its unconscionability claim. Such an interpretation of Shankle is inconsistent with later Supreme Court authority. In Green Tree Fin. Corp.-Ala. v.

Randolph, 531 U.S. 79 (2000), the Court recognized that prohibitive arbitration fees could preclude vindication of rights, but insisted that one so claiming must "bear[] the burden of showing the likelihood of incurring such costs." Id. at 92. This holding is grounded in the federal policy favoring arbitration and the requirement that the party opposed to arbitration must shoulder the burden of proof as to the unsuitability of the claims for arbitration. Id. at 91. Plaintiffs do not claim, despite the offer of People's Choice to pay all of the costs of arbitration, they will be unable to vindicate their rights due to the fees of arbitration.

    Moreover, Plaintiffs overread Shankle. In that case, an employee pressing employment discrimination claims was required to pay one-half the fees of arbitration. The employee resisting arbitration could not afford the fees. The Tenth Circuit held the arbitration provision unenforceable under the FAA. Shankle, 163 F.3d at 1235. The employer never offered to out-and-out pay the fees--instead, it was willing to advance the fees, with the employee remaining liable for them. Id. at n.4. The employer made the wholly conjectural argument that the arbitrator could possibly award the employee fees, but this was not good enough. Id. In rejecting this, the panel stated: "Because the Agreement does not actually shift responsibility for payment of fees based on ability to pay, fee shifting does not affect our analysis in this case." Id. This statement does not mean that an arbitration agreement must contain fee-shifting language or it is

unenforceable.  Read in context, it means that where a party seeking arbitration has not agreed to be responsible for the fee, the court looks to the arbitration agreement.  Likewise, the court will not "redline" the fee splitting provision and save the arbitration agreement because to do so would be to impose an unspecified and judicially-created remedy on the parties, contrary to the agreement.  Id. at n.6.  So interpreted, Shankle is consistent with Green Tree.  Regardless, Green Tree controls and it plainly emphasizes that the party opposing arbitration must show a likelihood of incurring such costs--Plaintiffs cannot make that showing given People's Choice's offer.

(6)  Plaintiff's Other Arguments for Unconscionability.  Plaintiffs suggest that the Agreement is unconscionable because it excepts "every claim that People's Choice could possibly bring against a consumer."  Doc. 32 at 17.  The exceptions include foreclosure and self-help remedies, as well as various other remedies concerning the loan or collateral.  See Doc. 25, attach.  Merely because People's Choice has excepted many  remedies it might rely upon to enforce the loan agreement or foreclose does not make the arbitration agreement unconscionable--the threshold for such a showing is "very high" and imbalanced terms are not enough.  Monette v. Tinsley, 975 P.2d 361, 365 (N.M. Ct. App. 1999); see also Harris v. Green Tree Fin. Corp., 183 F.3d 173 (3rd Cir. 1999).

Plaintiffs also suggest that the agreement's (1) ban on class actions, and (2) allowing *either* party to collect costs and expenses for having to compel

arbitration, is unconscionable because it prevents consumers from vindicating their rights. They further suggest that all of the conditions mentioned render the agreement cumulatively unconscionable. When viewed at the time of contract formation, the court cannot conclude that these conditions alone or in combination meet the high showing necessary for unconscionability, keeping in mind that state law concerning unconscionability cannot be aimed solely at arbitration agreements. No showing has been made of the likelihood and suitability of potential claims for class action status. See Iberia Credit Bureau, Inc. v. Cingular Wireless LLC, 379 F.3d 159, 174 (5th Cir. 2004). The fact that *either* party can recover costs and expenses for compelling arbitration undercuts the argument that it runs solely in favor of one party. And presumably, the fee shifting provision would be applied by a tribunal exercising some judgment.

(7) Disposition. Having concluded that the arbitration agreement is enforceable, the court will order Plaintiffs and Defendants People's Choice to arbitration. People's Choice contends that all remaining Defendants, none of which are parties to the arbitration agreement and none of which unequivocally consented, should be compelled to arbitrate. People's Choice bases this on the fact that all complaints against all of the Defendants arise from the Plaintiffs' attempt to refinance their home through the broker Defendants. According to People's Choice, because of the interrelationship of the Defendants, the court can order all Defendants to arbitration. Doc. 45 at 6. At the hearing, People's

Choice reminded the court that the complaint alleges People's Choice vested the broker Defendants with apparent authority, see Doc. 1 at 9, ¶¶ 52-53.  Of course, all concede that separate claims against the broker Defendants, as well as the other Defendants, exist that do not necessarily involve People's Choice, and the claims against Fremont are not linked to either the broker Defendants or People's Choice.

    A non-signatory may be bound to arbitrate if ordinary principles of agency and contract law so dictate.  Wash. Mut. Fin. Group, LLC v. Bailey, 364 F.3d 260, 267 (5th Cir. 2004).  Nothing suggests People's Choice as principal ever obtained the consent of its would-be agents (broker Defendants) concerning arbitration and the broker Defendants may not be compelled to arbitrate on that basis.  Bouriez v. Carnegie Mellon Univ., 359 F.3d 292, 294-95 (3rd Cir. 2004).  Nor do the non-signatory Defendants appear to be third-party beneficiaries of the contract between the Plaintiffs and People's Choice given the absence of any clearly stated intention in the agreement to benefit such parties.  See Bridas S.A.P.I.C. v. Gov't of Turkmenistan, 345 F.3d 347, 362 (5th Cir. 2003).  Equitable estoppel has been used to compel non-signatories to arbitration where a non-signatory seeks to rely upon a contract for a claim, yet disclaim the arbitration clause.  R.J. Griffin & Co. v. Beach Club II Homeowners Ass'n, 384 F.3d 157, 160-61 (4th Cir. 2004).  But People's Choice has never identified any direct benefit that the non-signatory Defendants are claiming from the contract

between the Plaintiffs and itself.  See Int'l Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 418 (4th Cir. 2000).  The court rejects the notion that a claim for indemnity by a non-signatory Defendant against a signatory Defendant constitutes a direct benefit vis-a-vis the contract.

Having decided that arbitration should proceed as to Plaintiffs and People's Choice, the court will stay these proceedings as to the non-signatory Defendants (with the exception of Fremont) at this time.  See Coors Brewing Co. v. Molson Breweries, 51 F.3d 1511, 1518 (10th Cir. 1995) (reviewing decision not to stay); Riley Mfg. Co. v. Anchor Glass Container Corp., 157 F.3d 775, 785 (10th Cir. 1998) (suggesting factors to be considered when some, but not all, of a party's claims are arbitrable).  The case will proceed as to Plaintiffs and Defendant Fremont.  The Plaintiffs and People's Choice shall file joint status reports with the court the first of every other month, beginning on April 1, 2005.

NOW, THEREFORE, IT IS ORDERED that:

(1)  the Motion to Expedite Ruling on Defendant's Motion to Compel Arbitration filed by People's Choice on December 1, 2004 (Doc. 26) is granted.

(2) the Motion to Stay and Compel Arbitration filed December 1, 2004 (Doc. 25), filed by People's Choice is granted insofar as Plaintiffs and People's Choice shall proceed to arbitration on the matters contained in the complaint, with all costs and fees of arbitration borne by People's Choice, and this case is stayed as to all claims except those involving Plaintiffs and Defendant Fremont.

(3)  Plaintiffs and People's Choice shall file joint status reports with the court the first of every other month, beginning on April 1, 2005.

DATED this 4th day of February 2005, at Santa Fe, New Mexico.

*Paul Kelly J.*
United States Circuit Judge
Sitting by Designation

Counsel:

Rob Treinen, Feferman & Warren, Albuquerque, New Mexico, for Plaintiffs.

James A. Askew & Aaron C. Viets, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, New Mexico, and Jeffrey R. Seewald & Stephanie Laird Tolson, McGlinchey Stafford, PLLC, Houston, Texas, and Gregg D. Stevens, Dallas, Texas, for Defendant People's Choice Home Loan, Inc.

Joseph L. Werntz and Mark A. Glenn, Moses, Dunn, Farmer & Tuthill, P.C., Albuquerque, New Mexico, for Defendant First American Title Insurance Co.

Richard Leverick, Leverick & Musselman, LLC, Albuquerque, New Mexico, for Defendant Fremont Investment & Loan Co.

Paul M. Kienzle, III, Scott & Kienzle, P.A., Albuquerque, New Mexico, for Defendant Mariners Capital, Inc.

Tom R. Normandin, Prenovost, Normandin, Bergh & Dawe, a Professional Corporation, Santa Ana, California, and Douglas R. Vadnais & Stan N. Harris, Modrall, Sperling, Roehl, Harris & Sisk, P.A., Albuquerque, New Mexico, for Defendant Genisys Financial Corporation and Defendant Hartford Fire Insurance Co.